BARRY J. PORTMAN
Federal Public Defender
JODI LINKER
Assistant Federal Public Defender
19th Floor Federal Building
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700

Counsel for Defendant CASTILLO-CHUN

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR-08-190 JSW |
| | ) | |
| Plaintiff, | ) | **DEFENDANT CASTILLO-CHUN'S** |
| | ) | **MOTION AND MEMORANDUM OF** |
| | ) | **POINTS AND AUTHORITIES IN** |
| | ) | **SUPPORT OF MOTION TO DISMISS** |
| v. | ) | **INDICTMENT ON GROUNDS THAT** |
| | ) | **PRIOR DEPORTATION CANNOT** |
| | ) | **SERVE AS PREDICATE FOR ILLEGAL** |
| EFRAIN CASTILLO-CHUN, | ) | **REENTRY PROSECUTION** |
| | ) | |
| | ) | Hearing Date: July 2, 2008 |
| Defendant. | ) | Time: 10:00 am |
| | ) | Court: Hon. Jeffrey S. White |

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................. 2

II.     STATEMENT OF FACTS ........................................... 3

A.      Mr. Castillo-Chun's Background ................................... 3

B.      Mr. Castillo-Chun's Removal From the United States .................... 5

C.      Legal Flaws in the Removal Proceeding ............................. 6

III.    ARGUMENT .................................................... 7

A.      MR. CASTILLO-CHUN WAS DENIED DUE PROCESS AT HIS DEPORTATION
        HEARING BECAUSE THE IJ FAILED TO ADVISE HIM OF HIS ELIGIBILITY FOR
        DISCRETIONARY RELIEF, BY WHICH HE WAS SUBSTANTIALLY PREJUDICED,
        RESULTING IN A CONSTITUTIONALLY FLAWED DEPORTATION ORDER .... 7

        1.      ENTRY OF THE DEPORTATION ORDER AGAINST MR. CASTILLO-CHUN
                WAS FUNDAMENTALLY UNFAIR (8 U.S.C. § 1326(D)(1)) .............. 9

                a.      Mr. Castillo-Chun's Due Process Rights Were Violated by the Defects in
                        the Underlying Deportation Proceeding Because He Was Eligible for
                        Asylum and Withholding of Removal ........................... 9

                        i.      The IJ Failed To Advise Mr. Castillo-Chun That He Was Eligible
                                for Asylum and Withholding of Removal ................... 10

                        ii.     Mr. Castillo-Chun Was Also Eligible for Relief Under the UN
                                Protocol ........................................... 13

                b.      Mr. Castillo-Chun Suffered Prejudice As a Result of These Defects  ... 13

        2.      AS MR. CASTILLO-CHUN WAS MIS-ADVISED BY THE IJ, HIS WAIVER
                OF APPEAL WAS NOT KNOWING AND INTELLIGENT AND HE WAS
                DENIED THE OPPORTUNITY FOR JUDICIAL REVIEW (8 U.S.C. §
                1326(D)(1) AND (D)(2)) .......................................... 19

                a.      Because Mr. Castillo-Chun's Waiver of Appeal was Not Knowing and
                        Intelligent, He is Deemed to Have Exhausted his Administrative Remedies
                        ................................................. 19

                b.      Mr. Castillo-Chun was Also Deprived of An Opportunity for Judicial
                        Review ............................................... 20

B.      IN SUM, THE INDICTMENT MUST BE DISMISSED BASED ON THE
        FUNDAMENTAL FLAW IN THE APRIL 26, 1996 DEPORTATION HEARING
        ................................................. 20

IV.     CONCLUSION .................................................. 21

i

## <u>TABLE OF AUTHORITIES</u>

### FEDERAL CASES

*Afridi v. Gonzalez*, 442 F.3d 1212 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Al-Harbi v. INS*, 242 F.3d 882 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Borja v. INS*, 175 F.3d 732 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Bridges v. Wixon*, 326 U.S. 135 (1945) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Castro-Ryan v. INS*, 847 F.2d 1307 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Duran v. INS*, 756 F.2d 1338 (9th Cir.1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Ghadessi v. INS*, 797 F.2d 804 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*INS v. St. Cyr*, 533 U.S. 289 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Kankamalage v. INS*, 335 F.3d 858 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Maldonado-Perez v. INS*, 865 F.2d 328 (D.C. Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . 6

*Melkonian v. Ashcroft*, 320 F.3d 1061 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . 11

*Miguel-Miguel v. Gonzalez*, 500 F.3d 941 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . 13

*Orantes-Hernandez v. Smith*, 451 F. Supp. 351 (C.D. Cal 1982) . . . . . . . . . . . . . 12, 13

*Sale v. Haitian Centers Council, Inc.*, 509 U.S. 155 (1993) . . . . . . . . . . . . . . . . . . . . 12

*United States v. Andrade-Partida*, 110 F. Supp. 2d 1260 (N.D. Cal. 2000) . . . . . . passim

*United States v. Arce-Hernandez*, 163 F.3d 559 (9th Cir. 1998) . . . . . . . . . . . . . . . 9, 20

*United States v. Arrieta*, 224 F.3d 1076 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . 9, 10, 14

*United States v. Garcia-Martinez*, 228 F.3d 956 (9th Cir. 2000) . . . . . . . . . . . . . . . . . 9

*United States v. Lopez-Hernandez*, 2007 WL 608111 (N.D.Cal. 2007) . . . . . . . . . . . . 9

*United States v. Lopez-Menera*, 542 F. Supp. 2d 1025 (N.D. Cal. 2008) . . . . . . . . 9, 20

*United States v. Mendoza-Lopez*, 481 U.S. 828 (1987) . . . . . . . . . . . . . . . . . . . . . passim

*United States v. Muro-Inclan*, 249 F.3d 1180 (9th Cir. 2001) . . . . . . . . . . . . . . . . 14, 19

*United States v. Ortiz-Lopez*, 385 F.3d 1202 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . 20

*United States v. Pallares-Galan*, 359 F.3d 1088 (9th Cir. 2004) . . . . . . . . . . . . 9, 19, 20

*United States v. Ubaldo-Figueroa*, 364 F.3d 1042 (9th Cir. 2004) . . . . . . . . . . . . passim

ii

*United States v. Velasco-Medina*, 305 F.3d 839 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . 17

**FEDERAL STATUTES**

8 U.S.C. § 1101 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17

8 U.S.C. § 1101 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

8 U.S.C. § 1158 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

8 U.S.C. § 1158 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

8 U.S.C. §1253 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

8 U.S.C. § 1253 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

8 U.S.C. § 1326 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Antiterrorism and Effective Death Penalty Act of 1996,
Pub. L. 104-132, Title IV § 440(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 17

**MISCELLANEOUS**

Wible, Brent S., *The Strange Afterlife of Section 212(c) Relief: Collateral Attacks on Deportation Orders in Prosecutions for Illegal Reentry After St. Cyr*, 19 GEO. IMMIGR. L.J. 455, 475 (Summer 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

BARRY J. PORTMAN
Federal Public Defender
JODI LINKER
Assistant Federal Public Defender
19th Floor Federal Building
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:  (415) 436-7700

Counsel for Defendant CASTILLO-CHUN

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | No. CR-08-190 JSW |
|---|---|---|
| | ) | |
| Plaintiff, | ) | **DEFENDANT CASTILLO-CHUN'S MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS INDICTMENT ON GROUNDS THAT PRIOR DEPORTATION CANNOT SERVE AS PREDICATE FOR ILLEGAL REENTRY PROSECUTION** |
| v. | ) | |
| EFRAIN CASTILLO-CHUN, | ) | |
| Defendant. | ) | Hearing Date: July 2, 2008 |
| | ) | Time: 10:00 am |
| | ) | Court:  Hon. Jeffrey S. White |

TO:    UNITED STATES OF AMERICA, PLAINTIFF; AND JOSEPH RUSSONIELLO, UNITED STATES ATTORNEY, NORTHERN DISTRICT OF CALIFORNIA; AND DEREK OWENS, ASSISTANT UNITED STATES ATTORNEY:

PLEASE TAKE NOTICE that on July 2, 2008, at 10:00 a.m., before the Honorable Jeffrey S. White, defendant Efrain Castillo-Chun (hereinafter "Mr. Castillo-Chun") will move this Court to dismiss the indictment on the grounds that the prior deportation order was entered after constitutionally defective deportation proceedings and therefore cannot serve as a predicate for a prosecution under 8 U.S.C. § 1326.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendant Efrain Castillo-Chun is charged in a one count indictment with a violation of 8 U.S.C. § 1326, illegal reentry after deportation.  The indictment against Mr. Castillo-Chun should be dismissed on the grounds that his deportation in 1996, as a matter of law, cannot constitute the prior lawful deportation order necessary for the government to establish the deportation element of a violation of 8 U.S.C. § 1326.

At the time of the deportation proceedings in 1996, Mr. Castillo-Chun had already been granted asylum and withholding of removal after an immigration judge recently determined that he had a legitimate fear of returning to Guatemala because there was a "clear probability" that he would be persecuted if returned.   While knowing this, the Immigration Judge (hereinafter "IJ") – contrary to clear authority – sent Mr. Castillo-Chun back to the very country that he feared.

The IJ did not ask about his fear of return to Guatemala, nor did he make any of the necessary inquiries into whether he could lawfully be returned to Guatemala; instead, he overtly mis-advised Mr. Castillo-Chun that he had no possibility of relief from deportation and ordered him removed.  Mr. Castillo-Chun should not have been returned to Guatemala after having already established his fear of return.  Through this error, the IJ denied Mr. Castillo-Chun due process of law, resulting in the defendant's unconstitutional deportation.  There is no question that Mr. Castillo-Chun suffered prejudice from this error because he was in fact eligible for relief from deportation and was nonetheless ordered removed from the United States.  Under these circumstances, the underlying deportation order cannot serve as a predicate for a prosecution for illegal reentry.  As the aforementioned deportation was Mr. Castillo-Chun's sole deportation or removal from the United States, this case presents an unusual situation requiring that the indictment be dismissed.

///

///

## II.    STATEMENT OF FACTS

**A.    Mr. Castillo-Chun's Background**

Mr. Castillo-Chun was born on July 14, 1975 in Guatemala City, Guatemala, as one of eight children.  *See* Request for Asylum in the United States, attached to Linker Auth. Decl. as Exhibit A.   His father died when he was only four years old and his mother was left to care for the entire family, all of whom lived in one room.  *Id.*  As a result of his family's extreme poverty, Mr. Castillo-Chun spent much of his adolescence living in the streets.  *Id.*  While he was not a street child, he certainly looked like one.  While in Guatemala, he only attended school for a total of five years, from age 7 to age 11, and then again at age 14.  *Id.*  At age 14, he had only completed the fourth grade.  *Id.*  When he was just 11 years old, he had to leave school to work because his mother had a stroke that paralyzed the right side of her body.  *Id.*  He worked for a few years to help support the family, but was finally able to go back to school at age 14.  *Id.*

A short time later, at the age of 15, Mr. Castillo-Chun fled to seek refuge in the United States based on his fear of persecution in Guatemala.  He arrived in the United States in March of 1991, and on August 5, 1991, at the age of 16, Mr. Castillo-Chun applied for asylum and withholding of removal based on his fear of returning to Guatemala.  *Id*.  At the time of his asylum application, he was living in a group home in Pittsburg, California called Amir Two.

As documented in greater detail in his asylum application, Mr. Castillo-Chun had several grounds for fearing return to Guatemala.  *Id.*  During his time in Guatemala, he was involved in political demonstrations, and feared the government would take retributive action against him for those actions.  *Id*.  He was also abused by the police on several occasions.  *Id*.  He was beaten and kicked by the police and despite reports to authorities, he was never provided any relief.  *Id*. Many of the children he was associating with were "disappeared" and then later found dead.  *Id.* He also lived in fear of being abducted and sent into the army.  *Id*.  He saw many people he knew be taken and forced into the military.  *Id.*

A hearing on Mr. Castillo-Chun's asylum application was held on October 17, 1991, at

1   which time the immigration judge concluded that his fear of returning to Guatemala was

2   legitimate.  To so conclude, the immigration judge had to determine that Mr. Castillo-Chun had a

3   "well-founded fear" of persecution on account of race, religion, nationality, membership in a

4   social group, or political opinion, and therefore granted Mr. Castillo-Chun asylum under Section

5   208(a) of the Immigration and Naturalization Act (hereinafter "INA").  8 U.S.C. § 1158 (1991).

6   In addition, the immigration judge also concluded that Mr. Castillo-Chun was entitled to a

7   separate and distinct form of relief entitled withholding of deportation under section 243(h) of

8   the INA, which precluded returning an alien to a country where he would face persecution and

9   required a higher standard of proof.  *See* Memorandum of Oral Decision dated October 17, 1991,

10  attached to Linker Auth. Decl. as Exhibit B; *see also* 8 U.S.C. § 1253 (1991).  By establishing

11  that there was a "clear probability" that he would face persecution if returned to Guatemala, Mr.

12  Castillo-Chun was also granted withholding of removal.  *Id.*

13       The government was prohibited from returning Mr. Castillo-Chun to Guatemala having

14  granted him withholding of removal and he was therefore permitted to remain in the United

15  States.  Having no family in Northern California, he continued to reside at the group home.  After

16  experiencing little socialization, supervision and support in Guatemala, and experiencing

17  similarly deficient support in the group home, Mr. Castillo-Chun found it somewhat difficult to

18  adapt to life in the United States.  He knew very little English and had a hard time keeping-up

19  with life in California.  Mr. Castillo-Chun was enrolled in high school, even though he had only

20  completed the fourth grade in Guatemala.  On March 8, 1994, while in his second year in high

21  school and just 18 years of age, he made a mistake that he has regretted his entire adult life.  He

22  was accused and eventually convicted of sexually assaulting a fellow student who was 16 years

23  of age, pursuant to California Penal Code Section 289(a) (1994), rape by a foreign object.  Mr.

24  Castillo-Chun was sentenced to the lowest term of confinement, three years (the highest term

25  being eight years).  Because of his young age, at the discretion of the sentencing judge, he was

26  committed to the California Youth Authority (hereinafter "CYA"), rather than a state prison.  *See*

1   Abstract of Judgement dated July 14, 1994 & Notice from California Department of Youth

2   Authority dated March 21, 1996., attached to Linker Auth. Decl. as Exhibit C.   Upon his release

3   from custody, Mr. Castillo-Chun was placed in immigration proceedings.

4   **B.     Mr. Castillo-Chun's Removal From the United States**

5        On March 7, 1996, the then Immigration and Naturalization Service (hereinafter "INS")

6   (now "ICE") issued an Order to Show Cause and Notice of Hearing (hereinafter "OSC") for Mr.

7   Castillo-Chun.  *See* Order to Show Cause and Notice of Hearing dated March 7, 1996, attached

8   to Linker Auth. Decl. as Exhibit D.  The OSC alleged that Mr. Castillo-Chun was not a citizen of

9   the United States, was a citizen of Guatemala, and had entered the country in 1991 without

10  inspection.  *Id*.  It also alleged that he had been granted political asylum.[1]  *Id*.  It further alleged

11  that he had been convicted on July 14, 1994 for violating California Penal Code Section 289(a),

12  rape by a foreign object, and that he was sentenced to three years confinement for that offense.

13  *Id*.  The OSC charged that based on that information he was subject to deportation pursuant to

14  Section 241(a)(2)(A)(i) of the Immigration and Nationality Act because he had been convicted of

15  a crime involving moral turpitude committed within five years of entry and sentenced to

16  confinement for one year or longer.  *Id.*

17       On March 21, 1996, an immigration judge ordered that Mr. Castillo-Chun could be

18  released on bond pending the determination of his immigration proceeding.  *See* Notification to

19  Alien of Conditions of Release or Detention dated March 21, 1996, attached to Linker Auth.

20  Decl. as Exhibit E.  On that same date, an immigration official indicated that his conviction was

21  an aggravated felony.  *See* Los Angeles District Office Deportation Officer Action Worksheet

22  dated March 21, 1996, attached to Linker Auth. Decl. as Exhibit F.  This was incorrect as a

23  matter of law since Mr. Castillo-Chun's conviction did not fall under the then-definition of

24  aggravated felony.

25  _____

26       [1]The OSC incorrectly states that he was granted political asylum on February 1, 1993.  He
    was actually granted asylum and withholding of removal on October 17, 1991.

1    On April 26, 1996, Mr. Castillo-Chun was placed in removal proceedings before an

2    immigration judge. *See* Transcription of Immigration Hearing, attached to Linker Auth. Decl. as

3    Exhibit H. He was not represented by counsel. At the hearing, the IJ erroneously informed Mr.

4    Castillo-Chun that he was not entitled to "any relief." *Id*. Mr. Castillo-Chun, not understanding

5    this, asked the IJ to explain it to him. *Id*. The IJ again erroneously responded, "Relief to avoid

6    the deportation, under the laws of the United States based on the conviction that you have there is

7    nothing that would uhh, prevent an order of deportation entered against you." *Id*. The IJ then

8    found Mr. Castillo-Chun removable and ordered him removed to Guatemala. *Id*.

9    At no time did any immigration official, including the IJ, discuss or inquire about Mr.

10    Castillo-Chun's legitimate fear of returning to Guatemala. Nor did anyone discuss anything

11    about asylum or withholding of removal in general. Indeed, as Mr. Castillo-Chun attests, no

12    official ever informed him that he was eligible for any relief from deportation. *See* Castillo-Chun

13    Declaration, attached to Linker Auth Decl. as Exhibit G. Instead, he was only told what the IJ

14    informed him on the record: that he was not eligible for *any* form of relief. Relying on the IJ's

15    statement, he believed there was nothing he could do to avoid his deportation; therefore, he

16    waived his appeal and was deported to Guatemala. *Id.*

17    **C.    Legal Flaws in the Removal Proceeding**

18    Mr. Castillo-Chun was eligible for relief from deportation. Specifically, based on his

19    legitimate fear of return to Guatemala, he was entitled to continued status as an asylee and to

20    withholding of removal – two separate and distinct forms of relief. Every alien has a protected

21    interest, whether it is secured by statute or by the Constitution, to petition for asylum or

22    withholding of removal. *See Maldonado-Perez v. INS*, 865 F.2d 328, 332 (D.C. Cir. 1989). The

23    IJ failed to advise Mr. Castillo-Chun of his eligibility for asylum and withholding of removal,

24    despite being on notice that Mr. Castillo-Chun had recently been granted such relief. The IJ's

25    failure rendered the deportation proceeding fundamentally unfair. Had the IJ properly advised

26    Mr. Castillo-Chun of his eligibility for relief, it was more than plausible that he would have been

granted relief and not deported back to Guatemala. Accordingly, he suffered prejudice as a result of the defect in his immigration proceeding.

At no point – before, during or after the immigration proceeding – was Mr. Castillo-Chun informed of his eligibility for any relief from deportation. To the contrary, he was affirmatively mis-advised that he was not eligible for any type of relief. Having been misadvised by the IJ of his eligibility for relief, Mr. Castillo-Chun did not knowingly and intelligently waive his right to appeal, and it was not a valid waiver of his appeal. As such, the deportation proceeding was clearly flawed.

## III.    ARGUMENT

**A.    MR. CASTILLO-CHUN WAS DENIED DUE PROCESS AT HIS DEPORTATION HEARING BECAUSE THE IJ FAILED TO ADVISE HIM OF HIS ELIGIBILITY FOR DISCRETIONARY RELIEF, BY WHICH HE WAS SUBSTANTIALLY PREJUDICED, RESULTING IN A CONSTITUTIONALLY FLAWED DEPORTATION ORDER**

In general, in order to convict a defendant of violating 8 U.S.C. § 1326, illegal reentry after deportation, the government must prove the following three elements beyond a reasonable doubt: 1) the defendant is an alien; 2) the defendant was previously deported from the United States; and 3) the defendant was found in the United States without the consent of the Attorney General. 8 U.S.C. § 1326(a). As such, a defendant's prior deportation is a predicate element for a prosecution under 8 U.S.C. § 1326. The United States Supreme Court has long established, however, that a prior deportation order cannot serve as a predicate for a subsequent prosecution under 8 U.S.C. § 1326 when the deportation proceedings giving rise to the order were fundamentally flawed. *See United States v. Mendoza-Lopez*, 481 U.S. 828, 837 (1987).

The Supreme Court's holding is rooted in the Due Process Clause of the Constitution: if 8 U.S.C. § 1326 "envisions that a court may impose a criminal penalty for reentry after *any* deportation, regardless of how violative of the rights of the alien the deportation proceeding may have been, the statute does not comport with constitutional requirement of due process." *Id.* at 838 (emphasis in original). Accordingly, the Court held that a defendant in a prosecution

1  pursuant to 8 U.S.C. § 1326 must be permitted to challenge the lawfulness of the prior

2  deportation. *Id*.

3       In *Mendoza-Lopez*, the defendants were arrested and deported after a group hearing at

4  which they purportedly waived their rights to apply for suspension of deportation and to appeal.

5  *Id.* at 840. They returned to this country, were once again arrested, and the government charged

6  them with a violation of 8 U.S.C. § 1326. *Id.* at 831. The underlying court found, and the

7  Supreme Court accepted as true, that the Immigration Judge failed to adequately explain the

8  defendants' right to suspension of deportation or their right to appeal. *Id.* at 840. The Supreme

9  Court then held that because the Immigration Judge "permitted waivers of the right to appeal that

10 were not the result of considered judgments by [defendants], and failed to advise [defendants]

11 properly of their eligibility to apply for suspension of deportation . . . the violation of

12 [defendants'] rights . . . amounted to a complete deprivation of judicial review." *Id.* at 841.

13 Thus, the government would not be permitted to rely on that prior deportation order as reliable

14 proof of an element of the § 1326 prosecution "[b]ecause [defendants] were deprived of their

15 rights to appeal and of any basis to appeal since the only relief for which they would have been

16 eligible was not adequately explained to them . . . ." *Id.* at 841, 843. The dismissal of the

17 indictments against defendants was required. *Id.* at 843.

18       In response to the holding of *Mendoza-Lopez*, Congress amended 8 U.S.C. § 1326 to

19 explicitly provide for a three part test for when a defendant can collaterally challenge a prior

20 deportation in a prosecution under section 1326:

21            In a criminal proceeding under this section, an alien may not challenge the validity
             of the deportation order described in subsection (a)(1) of this section or subsection (b) of
22           this section unless the alien demonstrates that--

23                 (1) the alien exhausted any administrative remedies that may have been available
                  to seek relief against the order;
24
                 (2) the deportation proceedings at which the order was issued improperly deprived
25               the alien of the opportunity for judicial review; and

26                 (3) the entry of the order was fundamentally unfair.

1  8 U.S.C. § 1326(d).  To prevail on a collateral attack to a prior deportation on grounds that the

2  deportation proceedings were fundamentally flawed, the defendant must meet each prong of the

3  three-part test.  *See United States v. Pallares-Galan,* 359 F.3d 1088, 1095 (9th Cir. 2004) (citing

4  8 U.S.C. § 1326(d)).

5          If a defendant succeeds in this three part test to collaterally attack the predicate

6  deportation order, the indictment against him must be dismissed.  *See United States v. Lopez-*

7  *Menera,* 542 F.Supp.2d 1025, 1027 (N.D. Cal. 2008); *United States v. Lopez-Hernandez,* 2007

8  WL 608111 (N.D.Cal. 2007); *United States v. Andrade-Partida*, 110 F.Supp.2d 1260, 1272

9  (N.D. Cal. 2000).

10          **1.     ENTRY OF THE DEPORTATION ORDER AGAINST MR. CASTILLO-**
          **CHUN WAS FUNDAMENTALLY UNFAIR (8 U.S.C. § 1326(D)(1))**

11

12          Here, Mr. Castillo-Chun's collateral challenge to his 1996 deportation order meets each

13  prong of this three-part test.  Because the first and second prongs are informed by the third, the

14  below analysis begins with the third prong, *i.e.*, that the entry of the order was fundamentally

15  unfair.  "An underlying removal order is 'fundamentally unfair' if (1) an alien's 'due process

16  rights were violated by defects in the underlying deportation proceeding' and (2) 'he suffered

17  prejudice as a result of the defects.'"  *Id.* (citing *United States v. Garcia-Martinez*, 228 F.3d 956,

18  960 (9th Cir. 2000)).  As detailed below, Mr. Castillo-Chun's due process rights were violated by

19  defects at his 1996 deportation proceeding and he suffered prejudice as a result of those defects.

20          ***a.     Mr. Castillo-Chun's Due Process Rights Were Violated by the Defects in***
          ***the Underlying Deportation Proceeding Because He Was Eligible for***
          ***Asylum and Withholding of Removal***

21

22          During a deportation hearing, the requirement that the IJ inform an alien of any apparent

23  eligibility for relief from deportation and give the alien the opportunity to pursue that form of

24  relief is "mandatory."  *See United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000) (quoting

25  *United States v. Arce-Hernandez*, 163 F.3d 559, 565 (9th Cir. 1998)).  An erroneous

26  determination by an IJ that the alien is statutorily ineligible for relief from deportation also

1  constitutes a denial of due process. *See United States v. Ubaldo-Figueroa,* 364 F.3d 1042, 1049-

2  50 (9th Cir. 2004) (an inaccurate statement that an alien is ineligible for any relief constitutes a

3  breach of the IJ's duty and a violation of due process). Failure of the IJ to inform the defendant

4  of his eligibility for a waiver of deportation in the underlying proceedings establishes a violation

5  of due process in a collateral appeal in a case brought under 8 U.S. C. § 1326. *See Arrieta*, 224

6  F.3d at 1079. The failure of the IJ to advise an alien of his eligibility for a waiver of deportation

7  violates the alien's due process rights and "amount[s] to a complete deprivation of judicial

8  review of the determination." *Mendoza-Lopez*, at 840. "Even if the alien's eligibility is not

9  clearly disclosed in the record, the IJ has a duty to discuss discretionary relief with the alien so

10 long as the record as a whole raises a reasonable possibility of eligibility of such relief."

11 *Andrade-Partida*, 110 F.Supp.2d at 1268.

12
### i. The IJ Failed To Advise Mr. Castillo-Chun That He Was Eligible for Asylum and Withholding of Removal

13

14       Mr. Castillo-Chun's due process rights were clearly violated through the deportation

15 process by the IJ's failure to advise him of his eligibility for relief. Based on the documents in

16 the record before the IJ – as an asylee who had recently been determined to have a well-founded

17 fear of return to Guatemala – the record as a whole raised a reasonable possibility of Mr.

18 Castillo-Chun's eligibility for asylum and withholding of removal. Indeed, the IJ twice stated on

19 the record that Mr. Castillo-Chun had previously been granted asylum and the prior order

20 granting asylum and withholding was in Mr. Castillo-Chun's alien and nationality file ("A-File").

21 Given that he had already been granted asylum, the IJ had a duty to discuss with Mr. Castillo-

22 Chun his eligibility for asylum and withholding of removal. The IJ's failure to do so violated

23 Mr. Castillo-Chun's due process rights. Furthermore, not only did the IJ fail to advise Mr.

24 Castillo-Chun of eligibility for relief, he overtly *mis-advised* Mr. Castillo-Chun that he was not

25 eligible for any relief when he was, in fact, so eligible. The IJ erroneously advised Mr. Castillo-

26 Chun that "based on the conviction that you have there is nothing that would uhh, prevent an

1    order of deportation entered against you," which was untrue given the fact that Mr. Castillo-Chun

2    had *not* been convicted of an aggravated felony.  This mis-advice further violated Mr. Castillo-

3    Chun's due process rights.

4           On October 17, 1991, Mr. Castillo-Chun was granted asylum and withholding of removal

5    based on an immigration judge's determination that there was a clear probability that he would

6    be persecuted if he were returned to Guatemala.  *See* Memorandum of Oral Decision, attached to

7    Linker Auth. Decl. as Exhibit B.  At his deportation proceeding in 1996, Mr. Castillo-Chun still

8    met the standard for asylum and withholding of removal.  Indeed, nothing had changed regarding

9    his legitimate fear of returning to Guatemala.  The only factor that had changed in that interim

10   period was that Mr. Castillo-Chun had been convicted of a crime of moral turpitude within five

11   years of his entry into the United States, therefore making him subject to deportation

12   proceedings.  Because his criminal conviction was *not* an aggravated felony, he was still eligible

13   for asylum and withholding of removal.  *See* 8 U.S.C. § 1158(a) & (d) (1996); 8 U.S.C. §

14   1253(h) (1997).

15          At the time of Mr. Castillo-Chun's deportation proceeding on April 26, 1996, the law

16   regarding asylum provided that an alien could be granted asylum if the Attorney General

17   determined that the alien was a "refugee."  *See* 8 U.S.C. § 1158(a).  A refuge was defined as a

18   person who was "unable or unwilling to return to" his or her home country "because of

19   persecution or a well-founded fear of persecution on account of race, religion, nationality,

20   membership in a particular social group, or political opinion."  8 U.S.C. § 1101(a)(42)(A)

21   (1996); *see Melkonian v. Ashcroft*, 320 F.3d 1061, 1064 (9th Cir. 2003).  In addition to other

22   exceptions not relevant here, only those who had been convicted of an aggravated felony were

23   precluded from applying for asylum.  8 U.S.C. § 1158(d) (1996).

24          While asylum and withholding of removal are separate and distinct forms of relief, an

25   application for asylum under 8 U.S.C. § 1158 is generally considered an application for

26   withholding of removal as well.  *See* 8 C.F.R. 208.3(b); *Ghadessi v. INS*, 797 F.2d 804, n.1 (9th

1   Cir. 1986). Withholding codified the international norm of "nonrefoulement" or non-return to a

2   country where an applicant would face persecution. *See Sale v. Haitian Centers Council, Inc.,*

3   509 U.S. 155, 179 (1993); *Borja v. INS*, 175 F.3d 732, 738 (9th Cir. 1998) (en banc). At the time

4   of Mr. Castillo-Chun's deportation proceeding in 1996, in order to qualify for withholding of

5   removal, an applicant had to show that his or her "life or freedom would be threatened" if

6   returned to his or her homeland, on account of race, religion, nationality, membership in a

7   particular social group, or political opinion. *See* 8 U.S.C. § 1253(h) (1997). To qualify for

8   withholding of removal, "an alien must demonstrate that it is more likely than not that he would

9   be subject to persecution on one of the specified grounds." *Al-Harbi v. INS*, 242 F.3d 882, 888

10  (9th Cir. 2001) (internal quotations and citations omitted). "Unlike asylum, withholding of

11  removal is not discretionary. The Attorney General is not permitted to deport an alien to a

12  country where his life or freedom would be threatened on account of one of the same protected

13  grounds that apply under the asylum statute." *Id.* (internal quotations and citations omitted).

14          At his 1996 deportation proceeding, the IJ knew that Mr. Castillo-Chun had already been

15  granted asylum based on his legitimate fear of returning to Guatemala. Twice, the IJ recognized

16  this fact on the record. *See* Transcription of Immigration Hearing, attached to Linker Auth. Decl.

17  as Exhibit H. Accordingly, there is no question that he was on notice of Mr. Castillo-Chun's

18  legitimate fear of return to his home country. At a minimum, he should have inquired about Mr.

19  Castillo-Chun's continued fear of return to Guatemala. *See* Declaration of Angela Bean, Esq,

20  (hereinafter "Bean Decl.") attached to Linker Auth. Decl. as Exhibit J.  Had he done so, Mr.

21  Castillo-Chun would have informed him that he was, indeed, still in fear of returning to

22  Guatemala. *See* Castillo-Chun Declaration, attached to Linker Auth Decl. as Exhibit G.

23          There was absolutely nothing in the record to suggest that his fear of return to Guatemala

24  had changed. As such, the IJ was *required* to advise Mr. Castillo-Chun of his right to seek relief

25  from deportation and avoid deportation back to the very country from which he had been granted

26  asylum and withholding of removal. *See Orantes-Hernandez v. Smith*, 451 F. Supp. 351, 355-58

(C.D. Cal 1982).  The IJ completely failed to inform Mr. Castillo-Chun of his eligibility for either form of relief (asylum or withholding of removal), and instead, affirmatively informed Mr. Castillo-Chun that there was "nothing that would prevent" his deportation.  *See* Bean Decl., attached to Linker Auth. Decl. as Exhibit J.  The contrary was true.  Mr. Castillo-Chun was not only eligible for asylum and withholding of removal, it was more than probable that he would have been granted such relief if the IJ had advised him correctly.  *Id.*

ii.    **Mr. Castillo-Chun Was Also Eligible for Relief Under the UN Protocol**

At the time of Mr. Castillo-Chun's deportation proceeding, the standard for withholding of removal under 8 U.S.C. § 1253(h) recently had been expanded as part of the Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter "AEDPA").[2]   Under the expanded withholding provision, those whose life or freedom would be threatened in their home country were eligible for withholding of removal *regardless of the exceptions provided in 8 U.S.C. § 1253(h)(2)* if such withholding was necessary to "ensure compliance with the 1967 United Nations Protocol Relating to the Status of Refugees."  8 U.S.C § 1253(h)(3) (1997); *see Miguel-Miguel v. Gonzalez*, 500 F. 3d 941, 946 (9th Cir. 2007).

As such, Mr. Castillo-Chun was also eligible for relief under the UN Protocol; yet, as with asylum and withholding of removal, the IJ failed to advise him accordingly.  While the IJ's failure to notify Mr. Castillo-Chun of his eligibility for relief under the UN Protocol may have been understandable due to the recency of the law's amendment (the expanded provision regarding the UN Protocol had gone into effect only two days prior to his immigration hearing), the IJ nonetheless had a duty to advise Mr. Castillo-Chun of all discretionary relief to which he

---

[2]The timing of Mr. Castillo-Chun's deportation proceeding (April 26, 1996) raises unique issues because it occurred two days after the AEDPA was enacted (April 24, 1996), but before the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (hereinafter "IIRIRA") was enacted (September 26, 1996).  Pursuant to the explicit terms of AEDPA and the U.S. Supreme Court's ruling in *INS v. St. Cyr*, 533 U.S. 289 (2001), certain provisions of the new law applied to Mr. Castillo-Chun, while others did not.

Mtn to Dismiss Indictment
*US v. Castillo-Chun*; Case No. CR 08-190 JSW         13

1  was reasonably entitled.  *See Andrade-Partida*, 110 F.Supp.2d at 1268.  The IJ's failure to do so

2  further violated Mr. Castillo-Chun's due process rights.

3              **b.      *Mr. Castillo-Chun Suffered Prejudice As a Result of These Defects***

4              To satisfy a showing of prejudice, an "alien does not have to show that he actually would

5  have been granted relief.  Instead, he must only show that he had a 'plausible' ground for relief

6  from deportation."  *See Ubaldo-Figueroa*, 364 F.3d at 1050 (quoting *United States v. Arrieta*,

7  224 F.3d 1076, 1079 (9th Cir. 2000)).  Although the Ninth Circuit has not defined the term

8  "plausible," "this standard would seem to encompass borderline cases, perhaps even where the

9  equities are in equipoise.  Stated differently, it seems fair to interpret this standard as granting

10 defendants in illegal entry cases the benefit of the doubt, even if they have a borderline claim of

11 prejudice, as long as they establish that their deportation proceeding was procedurally deficient."

12 Wible, Brent S., *The Strange Afterlife of Section 212(c) Relief: Collateral Attacks on*

13 *Deportation Orders in Prosecutions for Illegal Reentry After St. Cyr*, 19 Geo. Immigr. L.J. 455,

14 475 (Summer 2005).  Thus, under applicable law, Mr. Castillo-Chun ***need not*** show that he

15 actually would have been granted relief, or even that there was a reasonable probability that he

16 would have been granted relief.  *See United States v. Muro-Inclan*, 249 F.3d 1180, 1184 (9th Cir.

17 2001).  A showing of plausible or possible granting of relief is sufficient.

18             Here, there is no question that Mr. Castillo-Chun was prejudiced by the defects in his

19 deportation proceeding: had the defects not occurred, he would not have been returned to

20 Guatemala, the very country that the INS had recently determined he had a well-founded fear of

21 return.  The INS had already determined that there was a "clear probability" that he would be

22 persecuted if returned to Guatemala, yet, while knowing of Mr. Castillo-Chun's asylee status –

23 and without a single question or finding regarding his fear of return – the IJ sent him back to

24 Guatemala.  Such a fundamental flaw cannot stand.

25             At the time of his 1996 deportation proceeding, the standard for asylum and withholding

26 of removal had not changed since his original grant of such relief in 1991; therefore, if properly

1    advised, he would have sought and been granted relief.  Asylum still applied to "any person who

2    is outside any country of such person's nationality . . . and who is unable or unwilling to return

3    to, and is unable or unwilling to avail himself or herself of the protection of, that country because

4    of persecution or a well-founded fear of persecution on account of race, religion, nationality,

5    membership in a particular social group, or political opinion," just as it did in 1991. *Compare* 8

6    U.S.C. § 1158 (1996) & 8 U.S.C. 1101(a)(43)(A) (1996) *with* 8 U.S.C. § 1158 (1991) (an "alien

7    may be granted asylum in the discretion of the Attorney General if the Attorney General

8    determines that such alien is a refugee within the meaning of section 1101(a)(42)(A) of this

9    title.") & 8 U.S.C. § 1101 (1991) ("The term "refugee" means (A) any person who is outside any

10   country of such person's nationality . . . and who is unable or unwilling to return to, and is unable

11   or unwilling to avail himself or herself of the protection of, that country because of persecution

12   or a well-founded fear of persecution on account of race, religion, nationality, membership in a

13   particular social group, or political opinion.").

14         In addition, the standard for withholding of removal had not changed between the time of

15   his 1991 granting of withholding and his 1996 deportation proceeding.  At his deportation

16   hearing on April 26, 1996, the standard for withholding of removal was still as follows: "The

17   Attorney General *shall not* deport or return any alien (other than an alien described in section

18   1251(a)(4)(D) of this title) to a country if the Attorney General determines that such alien's life

19   or freedom would be threatened in such country on account of race, religion, nationality,

20   membership in a particular social group, or political opinion."  8 U.S.C. § 1253(h)(1) (1997)

21   (emphasis added); *compare* 8 U.S.C. § 1253(h)(1) (1991) ("The Attorney General shall not

22   deport or return any alien (other than an alien described in section 1251(a)(4)(D) of this title) to a

23   country if the Attorney General determines that such alien's life or freedom would be threatened

24   in such country on account of race, religion, nationality, membership in a particular social group,

25   or political opinion.").

26         Accordingly, there is no question that Mr. Castillo-Chun still met the standard for asylum

1   and withholding of removal *because the standard had not changed* since he had recently been

2   granted such relief.  The IJ's complete failure to advise him of his eligibility for this relief,

3   therefore prejudiced him.  Had he been properly advised, he would have sought such relief, and it

4   is, at a minium, probable that he would have been granted such relief.  Indeed, the defect in Mr.

5   Castillo-Chun's deportation proceeding resulted in the precise situation that the asylum and

6   withholding statutes sought to avoid: he was sent back to the very country that the feared return.

7          The government may try to argue that Mr. Castillo-Chun would not have been granted

8   either form of relief because of his prior conviction..  Such an argument is utterly baseless.  At

9   the time of Mr. Castillo-Chun's conviction and also at the time of his deportation proceeding,

10  Mr. Castillo-Chun's prior conviction was *not* an aggravated felony; therefore, his prior

11  conviction did not render him ineligible for relief from deportation.  *See* Bean Decl., attached to

12  Linker Auth. Decl. as Exhibit J; *see also INS v. St. Cyr*, 533 U.S. 289 (2001) (regarding

13  retroactivity of amendments to immigration laws)  and *Kankamalage v. INS*, 335 F.3d 858, 863-

14  64 (9th Cir. 2003) (same).

15         Under 8 U.S.C. § 1158(d), only those "convicted of an aggravated felon . . . may not

16  apply for or be granted asylum."  8 U.S.C § 1158(d) (1996).   Moreover, under section

17  1253(h)(2), an alien was ineligible for withholding of removal if the Attorney General

18  determined the alien "having been convicted by a final judgment of a particularly serious crime,

19  constitutes a danger to the community of the United States."  8 U.S.C. § 1253(h)(2)(B) (1997).

20  Congress was not silent about what constituted a "particularly serious crime" at that time.

21  Indeed, Congress explicitly provided that "an alien who has an aggravated felony shall be

22  considered to have committed a particularly serious crime."  Because Mr. Castillo-Chun's

23  conviction was not an aggravated felony, it was likely that he would have been granted relief

24  from deportation.  *See* Bean Decl., attached to Linker Auth. Decl. as Exhibit J.

25         To be considered an aggravated felony, the IJ would have had to have determined that his

26  prior conviction was a crime of violence for which the term of imprisonment was *at least five*

1    *years.* 8 U.S.C. Section 1101(a)(43) (1996) ("The term 'aggravated felony' means – . . . (F) a

2    crime of violence . . . for which the term of imprisonment (regardless of any suspension of

3    imprisonment) is at least five years.").[3]  As Mr. Castillo-Chun was only sentenced to three years

4    imprisonment, his conviction was not an aggravated felony and therefore was eligible for both

5    asylum and withholding of removal.  *See Kankamalage*, 335 F. 3d at 864 ("Under the

6    immigration laws in effect at that time, his conviction was not an aggravated felony because the

7    sentence imposed was less than five years.") (citing *United States v. Velasco-Medina,* 305 F.3d

8    839 (9th Cir. 2002)).

9         Indeed, in *Afridi v. Gonzalez*, the Ninth Circuit concluded that the immigration judge

10   could not generalize that a certain type of crime categorically excluded an alien for eligibility for

11   relief, but instead had to examine the underlying facts and circumstances of the conviction.  442

12   F. 3d 1212, 1220 (9th Cir. 2006).  There, Mr. Afridi had been convicted of an offense that the

13   court determined was sexual abuse of a minor, an aggravated felony under the law that applied to

14   him.[4]  *Id.* at 1215.  The Ninth Circuit concluded that even though crimes involving sexual abuse

15   of a minor generally involve force, that is not sufficient to determine that one is ineligible for

16   relief.  *Id.* at 1219.  Rather, it is still plausible that one convicted of such an offense may not be a

17   danger to the community.  The Ninth Circuit held that the immigration court "leapt directly from

18

19        [3]AEDPA amended the definition of "aggravated felony" under 8 U.S.C. § 1101(a)(43).
     Pub. L. 104-132, Title IV § 440(e), April 24, 1996.  That amendment, however, did not apply to
20   the type of felony for which Mr. Castillo-Chun was convicted.  *Id*.  Moreover, the amendments to
     Section 1101 only applied to "convictions entered on or after" April 24, 1996.  *Id*. at § 440(f).
21   As Mr. Castillo-Chun's date of conviction was July 14, 1994 – well before April 24, 1996 –
     AEDPA's amendments to the definition of aggravated felony do not apply.  Similarly, the
22   amendments to the definition of aggravated felony contained in IIRIRA do not apply to Mr.
     Castillo-Chun, as that act was enacted on September 30, 1996 and went into effect on April 1,
23   1997 – long after Mr. Castillo-Chun's conviction and deportation proceeding.  *See Kankamalage*,
     335 F. 3d at 864.
24
          [4]At the time of Mr. Alfridi's deportation proceeding, the law regarding withholding of
25   removal had been amended such that it did not exclude from eligibility all aliens convicted of
     aggravated felonies, but only those who had committed aggravated felonies where the sentence
26   imposed was at least five years.  *Id*. at 1217.

1   the fact of conviction to the determination that it could not withhold deportation," rather than

2   examining the particularized circumstances of the case. *Id*. Thus, where an offense does not

3   categorically exclude an applicant from withholding, the immigration judge *must* conduct a case

4   specific analysis and not simply rely on the type of conviction because – despite the type of

5   offense – the alien may not be found to be a danger to the community.

6        Here, Mr. Castillo-Chun was similarly denied the opportunity to establish his eligibility

7   for both asylum and withholding of removal. Had Mr. Castillo-Chun been given that

8   opportunity, the IJ would have learned that his conviction was not an aggravated felony.

9   Significantly, his offense was not even on the cusp of being considered an aggravated felony;

10  instead, his sentence was two years shy of what was considered an aggravated felony at the time.

11  The fact that he was sentenced to the lowest possible sentence for his offense further exemplifies

12  that the sentencing judge did not feel that Mr. Castillo-Chun was a danger to the community.

13  Additionally, the offense was committed when Mr. Castillo-Chun was just eighteen years old,

14  and in the tenth grade. Because of his youth, he was not sent to prison, but was instead sent to

15  the California Youth Authority to serve his sentence. Just as in *Afridi*, the type of conviction did

16  not categorically exclude Mr. Castillo-Chun from relief from deportation. To the contrary, Mr.

17  Castillo-Chun was eligible for relief, and given the particular circumstances of Mr. Castillo-

18  Chun's offense and his personal situation, had Mr. Castillo-Chun been provided what he was

19  entitled – an individualized determination of his eligibility for asylum and withholding – it was

20  more than plausible that he would have been granted relief from deportation.

21       In sum, the failure of the IJ to advise Mr. Castillo-Chun of his eligibility for withholding

22  of removal resulted in Mr. Castillo-Chun's immediate deportation. The IJ informed Mr. Castillo-

23  Chun that he was not eligible for *any* form of relief from deportation. That was plainly wrong.

24  Had it not been for the defect in Mr. Castillo-Chun's deportation proceeding, he would not have

25  been deported back to the very country that the United States government had already determined

26  he legitimately feared. Accordingly, Mr. Castillo-Chun thus suffered substantial prejudice: he

was eligible for both asylum and withholding of removal and it is more than plausible that he

would have received relief from deportation had he been properly advised.

**2.      AS MR. CASTILLO-CHUN WAS MIS-ADVISED BY THE IJ, HIS WAIVER OF APPEAL WAS NOT KNOWING AND INTELLIGENT AND HE WAS DENIED THE OPPORTUNITY FOR JUDICIAL REVIEW (8 U.S.C. § 1326(D)(1) AND (D)(2))**

**a.      *Because Mr. Castillo-Chun's Waiver of Appeal was Not Knowing and Intelligent, He is Deemed to Have Exhausted his Administrative Remedies***

Although 8 U.S.C. § 1326(d)(1) requires that an alien exhaust all administrative remedies

before a collateral attack will succeed, the exhaustion requirement "cannot bar collateral review

of a deportation proceeding when the waiver of right to an administrative appeal did not comport

with due process." *Ubaldo-Figueroa*, 364 F.3d at 1048 (citing *United States v. Muro-Inclan*, 249

F.3d 1180, 1183-84 (9th Cir. 2001)). The Due Process Clause requires that an alien's waiver of

his right to appeal a deportation order be "considered and intelligent." *See id* at 1049*; see also*

*Mendoza-Lopez*, 481 U.S. at 839.   An alien who is not advised of his rights cannot make a

"considered and intelligent" waiver, and is thus not subject to the exhaustion of administrative

remedies requirement of 8 U.S.C. § 1326(d).  *See Ubaldo-Figueroa*, 364 F.3d at 1049-1050;

*Pallares*, 359 F.3d at 1096 ("Where 'the record contains an inference that the petitioner is

eligible for relief from deportation,' but the IJ fails to 'advise an alien of this possibility and give

him an opportunity to develop the issue,' we do not consider an alien's waiver of his right to

appeal his deportation order to be 'considered and intelligent.'")(citing *Muro-Inclan*, 249 F.3d at

1182)(remaining citations omitted.)  As such, under Ninth Circuit precedent, the undisputed

failure of the IJ or any immigration official to correctly advise Mr. Castillo-Chun of his eligibility

for asylum and withholding of removal – and the affirmative statement that Mr. Castillo-Chun

was not eligible for *any* form of relief – excuses Mr. Castillo-Chun from the administrative

remedies exhaustion requirement of his collateral attack under 8 U.S.C. § 1326(d)(1).  *See Muro-*

*Inclan*, 249 F.3d at 1183; *Lopez-Menera,* 542 F.Supp.2d at 1027.

1

        ***b.***    ***Mr. Castillo-Chun was Also Deprived of An Opportunity for Judicial Review***

2

3
      An immigration judge is obligated to advise an alien regarding apparent avenues for relief

4
from deportation. *See, e.g., Duran v. INS*, 756 F.2d 1338, 1341-42 (9th Cir.1985) (citing 8

C.F.R. § 242.17(a) (1984)). When the IJ fails to so advise, the Ninth Circuit has held that aliens

5
are deprived a meaningful opportunity for judicial review. *See, e.g, Pallares-Galan*, 359 F.3d at

6
1098 ("For the same reasons [as those stated to find that Pallares' waiver of appeal was

7
procedurally defective] we hold that Pallares was deprived of a meaningful opportunity for

8
judicial review"); *see also Ubaldo-Figueroa*, 364 F.3d at 1050 (same); *see also Andrade-*

9
*Partida*, 110 F. Supp at 1271 (finding that the IJ's failure to advise of section 212(c) relief

10
deprived the alien of judicial review). Mr. Castillo-Chun thus meets this prong of a collateral

11
attack on his deportation proceeding.

12

**B.**    **IN SUM, THE INDICTMENT MUST BE DISMISSED BASED ON THE**
13
      **FUNDAMENTAL FLAW IN THE APRIL 26, 1996 DEPORTATION HEARING**

14
      An immigration judge has a duty to inform an alien of any relief to which he may be

15
entitled. *See Arce-Hernandez*, 163 F.3d at 562. The Supreme Court has long recognized that

16
because deportation "visits a great hardship on the individual and deprives him of the right to

17
stay and live and work in this land of freedom[, ] . . . [m]eticulous care must be exercised lest the

18
procedure by which he is deprived of that liberty not meet the essential standards of fairness."

19
*Bridges v. Wixon*, 326 U.S. 135, 154 (1945); *see e.g., United States v. Ortiz-Lopez*, 385 F. 3d

20
1202 (9th Cir. 2004) (holding that the IJ's failure to advise an individual of eligibility for

21
voluntary departure was violation of due process requiring remand to the district court, and

22
placing the burden on the government to present evidence that procedural violation could not

23
have changed the outcome of the proceedings). The high stakes of a removal proceeding and the

24
maze of immigration rules and regulations make evident the necessity that the IJ carefully guide

25
the unrepresented person in immigration proceedings. The proliferation of immigration laws and

26
regulations has aptly been called a labyrinth that only a lawyer could navigate. *Castro-Ryan v.*

1    *INS*, 847 F.2d 1307, 1312 (9th Cir. 1988).

2        Here, because the IJ (1) failed to advise Mr. Castillo-Chun of his eligibility for asylum

3    and withholding of removal, and (2) affirmatively *mis-advised* Mr. Castillo-Chun that he was not

4    eligible for any form of relief, Mr. Castillo-Chun's due process rights were violated.  Given that

5    Mr. Castillo-Chun was eligible for both asylum and withholding of removal and has

6    demonstrated that he was a plausible candidate for such relief, he was prejudiced by the IJ's

7    erroneous advice.  Accordingly, Mr. Castillo-Chun's deportation proceedings were

8    fundamentally flawed.  Under Ninth Circuit precedent, the aforementioned circumstances excuse

9    Mr. Castillo-Chun from the administrative exhaustion requirement.  Under the same reasoning,

10   Mr. Castillo-Chun was denied the opportunity for judicial review.  Thus, Mr. Castillo-Chun

11   successfully meets all three prongs of a collateral attack on the April 26, 1996 deportation that is

12   a necessary element for his conviction under 8 U.S.C. § 1326.  Given that the April 26, 1996

13   deportation is the only deportation Mr. Castillo-Chun has suffered, the United States cannot meet

14   its burden of proof on an essential element of the charge under 8 U.S.C. § 1326.   Accordingly,

15   the indictment must be dismissed.

16                          **IV.    CONCLUSION**

17       For the foregoing reasons, Mr. Castillo-Chun respectfully requests that this Court dismiss

18   the indictment in the instant case.

19   Dated: June 5, 2008

20                          Respectfully submitted,

21                          BARRY J. PORTMAN
                            Federal Public Defender

22                               /s/

23                          JODI LINKER
24                          Assistant Federal Public Defender

25

26